IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

```
------------------------------------------------------  :
                                                        :
  SHARON HALE, et al.,                                  : CASE NO. 1:04 CV 1646
                                                        :
                              Plaintiffs,               :
                                                        : OPINION AND ORDER ADOPTING
              -vs-                                      : REPORT AND RECOMMENDATION
                                                        : AND GRANTING DEFENDANTS'
  VILLAGE OF MADISON, et al.,                           : MOTIONS TO DISMISS
                                                        :
                              Defendants.               :
                                                        :
------------------------------------------------------
```

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        Plaintiffs Sharon Hale and Tracy Butler assert claims of sexual harassment and

retaliation, in violation of 42 U.S.C. 2000, et seq. ("Title VII") and O.R.C. § 4112 against

the Village of Madison, Ohio and Village Administrator John Sample, who was Ms

Hale's supervisor, and, in his role as Village Administrator, had a supervisory role as to

Ms Butler.  (Amended Complaint ¶8).  Their complaint also raises various Ohio tort

claims relating to what they allege was a hostile work environment.  Michael Hale and

Scott Butler, husbands of Ms Hale and Ms Butler, are also named plaintiffs, asserting

loss of consortium claims.

        On 24 August 2004, the defendants filed a motion for partial judgment on the

pleadings, seeking dismissal of Ms Butler's Title VII claim and Ms Hale's FMLA claim.

(Docket No. 4).  This Court granted the motion in part and denied it in part, dismissing

Ms Hale's FMLA claim but permitting Ms Butler's Title VII claim to proceed.  (Docket No.

10).

The defendants' motions for summary judgment, filed 13 March 2006, are now before this Court seeking dismissal of all claims asserted against them, which the plaintiffs opposed. (Docket No. 38 - 41).  The motions were  referred to United States Magistrate Judge Patricia Hemann on 17 April 2006 for a Report & Recommendation ("R&R").  (Docket No. 46).   Her R&R recommends that this Court grant the defendants' motions for summary judgment and dismiss all claims raised by all the plaintiffs against defendants.  (Docket No. 50).  The plaintiffs objected to Magistrate Judge Hemann's R&R, and the defendants responded to those objections.  (Docket Nos. 52, 53, 55, 56).

For the reasons set forth below, this Court will adopt Magistrate Judge Hemann's well-reasoned R&R and grant the defendants' motions for summary judgment.

## I. BACKGROUND

Plaintiff Tracy Butler worked for the Village of Madison from the fall of 1997 through the fall of 1998 as the Mayor's Clerk of Courts, then from October 1999 through October 2003 as elected Clerk-Treasurer, and then again as the Mayor's Clerk of Courts.  (Docket No. 40, Ex. 3, Butler Dep.).  Plaintiff Sharon Hale worked for the Village of Madison as an administrative assistant to John Sample from July 2002 until her termination in March 2005.  (Docket No. 50, Ex. 5, Hale Dep.)  Throughout this time, Mr. Sample was the Village Administrator, an appointed position which he held from 1981 through February 2006.  (Docket No. 40, Ex. 2, Sample Dep.)

Ms Butler resigned from her employment with the Village on 30 October 2003. (Butler Dep. p. 161).  She testified at her deposition that the stress from her job with the Village caused her stomach problems, decreased decision-making skills,  neck and

2

back pain, and hair loss. (Butler Dep. p. 162).  She has sought treatment from a chiropractor.  (Butler Dep. p. 166).

The Village of Madison terminated Ms Hale in March 2005.  The Village maintains her termination was the result of insubordination, citing as its justification five disciplinary actions, and a March 2005 incident in which Mr. Sample requested Ms Hale to produce a water account history but she refused to produce the report until her attorney had an opportunity to review it.  (Docket No. 38 p. 16).  Ms Hale argues that her termination was an act of retaliation and she testified she never received notice explaining the reasons for her termination until her deposition in this matter in August 2005.  (Hale Dep. p. 219).

The plaintiffs brought suit against the Village of Madison and John Sample in the Lake County Court of Common Pleas in July 2004.  The case  was removed to this Court by the defendants on 17 August 2004.

The complaint, amended on 15 February 2005, alleged the following causes of action: (1) sexual harassment in violation of Title VII and O.R.C. § 4112 against the Village of Madison and John Sample; (2) retaliation for exercising protected activity in violation of Title VII and O.R.C. § 4112 against the Village of Madison and John Sample; (3) intentional infliction of emotional distress in violation of state law against both defendants; (4) violation of the Family and Medical Leave Act ("FMLA") against both defendants ; (5) negligent hiring, supervising, and retention in violation of state law against the Village of Madison; (6) constructive discharge in violation of state law against both defendants; and (7) loss of companionship and consortium in violation of state law, asserted by spouses Scott Hale and Michael Butler.  (Docket No. 9).

When a Court examines issues regarding a claim of a hostile work environment, the totality of the circumstances must be examined, including what, if any, conduct is discriminatory, whether the challenged conduct is merely offensive rather than physically threatening or humiliating and whether it "unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The standard is demanding to ensure that Title VII does not become a general code of civility. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1988).

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create creates an abusive working environment." Harris, 510 U.S. at 23.  Similarly, when a judge analyzes a Title VII and/or state retaliation claim, his or her focus is retaliation which produces injury or harm. Burlington N. and Santa Fe Ry. Co. v. White, 126 S.Ct. 2405, 2414 (2006).  For these reasons, the plaintiffs' factual assertions will be meticulously set forth, and will be viewed, as they must be, in the light most favorable to the plaintiffs.

**A.  Sexual Harassment Allegations**

Ms Butler asserts Mr. Sample engaged in behavior that amounts to sexually harassing conduct during her various terms of employment.  In the spring of 1998, Mr. Sample asked Ms Butler whether she was wearing thong underwear, and then explained he was asking because she didn't appear to have any panty lines.  (Butler Dep. pp. 17, 18).  Two years later, Mr. Sample showed Ms Butler a picture on his computer screen of one cow with a "huge penis" mounting another cow.  (Butler Dep. p. 28).  About that same time, Ms Butler heard Mr. Sample advise a female co-worker that

4

she should get a vibrator in response to a conversation about the co-worker's recent divorce.  (Butler Dep. p. 27).  On several occasions in early 2002, Mr Sample would lean six or seven inches in towards Ms Butler as if to kiss her, and then step away and reply as if answering for Ms Butler, "No way, fat boy."  (Butler Dep. pp. 48-50).  Later that same year, Mr. Sample commented to Ms Butler and Ms Hale that his son was a coach to a girls' volleyball team and that he had advised his son to go into the locker room while the girls were showering.  (Butler Dep. p. 55).  In November 2002, Ms Butler entered Mr. Sample's office to obtain an office key and witnessed Mr. Sample typing at his computer; she believed he was conversing in an electronic chat room with a picture of a woman wearing lingerie on the computer monitor.  (Butler Dep. p. 57).  A month later, Mr. Sample made the comment, "someone's chewing on my nuts," which Ms Butler believed was both a reference to a box of Malley's candy located in the office and a sexual innuendo.  (Butler Dep. pp. 61-62).  In January 2003, while reviewing blueprints for the proposed new Village Hall, Mr. Sample made the comment to Ms Butler that additional showerheads would be installed in the floor of the women's shower room for the purpose of pleasuring women.  (Butler Dep. p. 64).  Around that same time period, Mr. Sample shared a joke, sexual in nature, with Ms Butler - "The gist of the joke was how this man was, I believe, ordering fast food, and whether he wanted plain or fried, and indicating how he was eating his wife, whether he'd rather have eaten his wife plain or fried."  (Butler Dep. pp. 66-67).

Ms Hale also asserts that Mr. Sample engaged in behavior that amounts to sexually harassing conduct.  In December 2002, Ms Hale and Mr. Sample were discussing a $0.69 recycling fee that the Village was planning to assess the residents,

and Mr. Sample made the comment "well you know all about that, don't you," referring to the number sixty-nine.  (Hale Dep. p. 34).  That same month, after a co-worker had offered to give Ms Hale a tour of the Village cemetery, Mr. Sample stated to Ms Hale that the co-worker just wanted to "bury his stiff."  (Hale Dep. p. 35).  After this comment, Mr. Sample told Ms Hale a story about his wanting to put heat lamps on a female corpse so that he could have his way with her.  Id.  Mr. Sample also made a comment indicating that women were bad drivers and once questioned whether Ms Hale suffered from premenstrual syndrome.  (Hale Dep. p. 41).  Ms Hale testified in her deposition that Mr. Sample made additional offensive comments, but that she could not recall specifics. (Hale Dep. p. 37).

Ms Hale further recounted an incident that took place on 4 February 2003 when she and Mr. Sample were discussing an employee who had been locked out of a school district meeting, and Mr. Sample informed Ms Hale that nobody would have stopped him from entering the meeting.  Ms Hale asked him if he would bully his way into the meeting, to which he responded by walking towards her and leaning his body hard enough against Ms Hale so as to knock her off her feet (although she held onto the photocopier to avoid being knocked to the ground).  (Hale Dep. p. 38).  Finally, Ms Hale testified that on multiple occasions she entered Mr. Sample's office and he was conversing in electronic chat rooms with an individual known as "RubyRedLips4You," and that there was a picture of a woman in a negligee on his computer monitor during these chat sessions.   (Hale Dep. pp. 49-50).

6

**B. Sexual Harassment Investigation**

On 14 February 2003, Mr. Sample and Ms Hale met in Mr. Sample's office to discuss the tension that had developed between them.  (Hale Dep. p. 47).  Although Ms Hale could not recall what was specifically discussed during the meeting, she testified that the end result of the meeting was that they both agreed to try and improve their professional relationship.  (Hale Dep. p. 53).    Nevertheless, the tension between Mr. Sample and Ms Hale persisted.  On 20 February 2003, Ms Hale and Mr. Sample met with the Village Mayor Michael Evangelista to discuss the problems in their work environment.  The parties agreed that Ms Hale was performing her job responsibilities in a satisfactory manner and that Mr. Sample would make no further comments containing sexual innuendos in Ms Hale's presence.  (Docket No. 40, Evangelista Dep., Ex. 3). The meeting concluded with both agreeing to work towards having a professional working relationship. (Hale Dep. pp. 58-59).  Immediately following this meeting, Mayor Evangelista met with Ms Hale and Ms Butler at which time both women notified the mayor that they believed they were victims of sexual harassment arising from Mr. Sample's comments and behavior.  (Hale Dep. p. 59).

The day after Mayor Evangelista was put on notice of Ms Hale's and Ms Butler's complaints, he contacted the Village Solicitor Michael Murray and asked him to conduct an investigation into the allegations.  Mayor Evangelista then notified the town council of the investigation at the next council meeting.  (Evangelista Dep. pp. 32, 46).  Mr. Murray's investigation involved interviews with Ms Butler, Ms Hale, and Mr. Sample. (Docket No. 40, Evangelista Dep., Ex. 3).  Because Mr. Sample admitted to the

7

allegations, Mr. Murray concluded there was no reason to expand the investigation beyond these three individuals.  Id.

While Mr. Murray was conducting his investigation, Mayor Evangelista kept in touch with Ms Hale and Ms Butler by phone in an effort to be kept apprised of any changes or problems in the work environment.  (Evangelista Dep. pp. 43-44).

In March, Mr. Sample set-up and participated in a sexual harassment training session conducted by an employee in the human resources department at CT Consultants.[1]  Four additional Village employees participated in the training with Mr. Sample.  (Evangelista Dep. pp. 69-70).  Mayor Evangelista testified that Mr. Sample attended the class in response to the allegations asserted against him, although prior to any finding that he had actually violated the Village's sexual harassment policy.  Id.

On 15 March 2003, Ms Hale, Ms Butler, their attorney Timothy Cannon, Mayor Evangelista, and Village Solicitor Michael Murray held a meeting to further discuss the sexual harassment claims.  (Evangelista Dep., Ex. 3).  At that meeting, Ms Hale and Ms Butler stated that the work environment had deteriorated since the 20 February meeting, and Ms Hale indicated she feared Mr. Sample might physically assault her either on village property or when leaving Village property.  Id.  The plaintiffs further explained to Mayor Evangelista and Mr. Murray that Mr. Sample kept his office door closed and had discussions with visitors behind closed doors, he played opera music in

---

[1]  CT Consultants is the engineering firm employed by the Village of Madison.  Mr. Sample contacted the firm to inquire into whether they had someone available in their human resources department available to do sexual harassment sensitivity training.  CT Consultants Vice President Ned Foley informed Mr. Sample that he did have such an employee and subsequently made arrangements with Mr. Sample to have this person conduct a workshop for Mr. Sample and other Village employees.  (Docket No. 40, Ex. 2, Sample Dep.).

his office, he failed to keep them apprized of certain information that was necessary for them to carry out their employment duties, and that Mr. Sample had removed some important paperwork from Ms Hale's desk.  Id.

On 15 April 2003, Mr. Murray completed his investigation into the Ms. Hale's and Ms Butler's sexual harassment allegations.  Id.  The report concluded that Mr. Sample had violated the Village's sexual harassment policy, but that the behavior which violated the sexual harassment policy had ceased since it had first been reported.  Id. The report further noted that Mr. Sample had attended a sexual harassment sensitivity training in March 2003 and had been instructed to take no acts of retaliation against his accusers.  Id.  The report made no recommendation regarding whether the Village should reprimand Mr. Sample for having violated the Village's policy, nor did the report make a recommendation with respect to the retaliation allegations raised at the 15 March meeting.  Id.  Neither the Village Council nor the Mayor ever issued Mr. Sample a written reprimand for his having violated the Village's sexual harassment policy. (Evangelista Dep. pp. 62-63).  Although the Village policy calls for a reprimand in cases where an employee is found to have violated the sexual harassment policy, the Village Council and the Mayor concluded that Mr. Sample has ceased making sexual comments after the 20 February meeting[2] and that because he had orchestrated and attended a sexual harassment sensitivity training workshop, the policy and procedure had served its intended corrective purpose.

_____

[2]  Ms Hale's and Ms Butler's deposition transcripts indicate that the sexual comments and jokes ceased after the 20 February meeting.

**C. Allegations of Retaliation**

In her deposition, Ms Butler asserted allegations of retaliation that Mr. Sample took in response to her having raised a sexual harassment complaint. She claimed that certain village business was kept from her in an effort to reduce her ability to do her job effectively and that Mr. Sample was discourteous to her. (Butler Dep. pp. 129, 137). She stated that Mr. Sample isolated her from her co-workers, explaining that the co-workers would treat her "differently" by not talking to her when Mr. Sample was present but were friendlier in his absence. (Butler Dep. p. 124). Ms Butler further alleged that in March 2003 she arrived at work and found a message on her computer screen that read, "Do you want to enter the chat room?" (Butler Dep. p. 129). Ms Butler believes that Mr. Sample in retaliation placed the message on her computer to entice her to enter the electronic chat room in violation of the Village's computer internet policy. (Butler Dep. p. 133). Further, Ms Butler interpreted a directive from Mr. Sample to clean up the office as an act of retaliation, because his request was "unreasonable" and he used a harsh tone. (Butler Dep. p. 139-140). She testified at her deposition that she feared for her safety when at work, but could not pinpoint why she felt unsafe. (Butler Dep. pp. 230-32).

Ms Hale also testified to certain acts she alleged to be retaliatory in nature arising from her sexual harassment complaint. She asserted that Mr. Sample took away some of her job responsibilities, such as ordering road salt for the Village, and assigned her tasks with unrealistic deadlines. (Hale Dep. pp. 82, 90). A temporary employee was hired for one and one-half weeks, and Ms Hale testified that this employee was directed by Mr. Sample to take over some of Hale's duties even though

10

the temporary employee had been hired for the purpose of relieving Ms Butler of some

of her duties.  (Hale Dep. p. 100).  Ms Hale further alleged that Mr. Sample in retaliation

installed a lockbox on the office thermostat, and then maintained an uncomfortably cold

office temperature, between 66 - 70 degrees (Hale Dep. p. 105); posted on the office

calendar the days Ms Hale was scheduled to be absent for doctor's appointments (Hale

Dep. p. 148); and removed her telephone headset which Ms Hale asserts was a

medically necessary device.  (Hale Dep. p. 147).  She also alleges that a directive from

Mr. Sample to clean out a supply closet was retaliation because she was dressed nicely

on the day he assigned the task.  (Hale. Dep. pp. 165-66).   Ms Hale asked if she could

clean the closet the following day and Mr. Sample insisted that it be done that day.  Ms

Hale refused to clean the closet that day and she never completed the task thereafter.

(Hale. Dep. p. 167).

        Ms Hale testified that Mr. Sample on occasion became visibly angry, "would turn

red, he would sweat, [and] his neck would bulge."  (Hale Dep. p. 239).  On 4 June 2004,

Mr. Sample and police officer James Middleton were having a conversation about a

recent domestic violence incident in the Village of Madison.  (Docket No. 41, Ex. 7,

Middleton Aff.).  Upon hearing that the victim had been beaten on multiple occasions,

Mr. Sample made a comment to the effect that the victim deserved a beating for

allowing her spouse to return after so many previous violent episodes.  Id.  Ms Hale,

having overheard the comment, stated she was offended, which sparked an irate

reaction from Mr. Sample.  Id.  Mr. Sample raised his voice and shouted profanities at

Ms Hale, accusing her of not minding her own business.  Id.  Officer Middleton asked

11

Mr. Sample to calm down, but he did not.  Id.  Officer Middleton sought help from Lieutenant Forsythe, who took Mr. Sample into his office to calm him down.  Id.

Ms Hale asserts that the five disciplinary actions she was subjected to after the 20 February meeting were acts of retaliation.  She received three written reprimands from Mayor Evangelista and one from John Sample.  Her first reprimand was issued on 24 July 2003 for rude behavior toward a Village resident inquiring about a water service fee, and also for refusing to produce a report of the resident's billing account pursuant to Mr. Sample's request.  (Hale Dep. p. 191).  Her second reprimand was issued in response to three additional complaints from Village residents claiming Ms Hale was discourteous or unhelpful.  (Hale Dep. p. 192).  Her third reprimand occurred because Ms Hale allegedly called her attorney for personal reasons on Village time.[3]  (Hale Dep. p. 193).  Ms. Hales's fourth reprimand was for discourteous treatment of a temporary employee.  (Hale Dep. p. 193-94).  In addition to the four written reprimands, Ms Hale received a three-day suspension without pay for billing a Village resident for actual water meter readings when the bill was based on an estimation.  Id.

## II.  REPORT AND RECOMMENDATION

This matter was referred to Magistrate Judge Hemann on 17 April 2006 for a R&R.  (Docket No. 46).  Magistrate Judge Hemann filed her R&R on 23 May 2006.  (Docket No. 50).  Concluding that all of the plaintiffs' causes of action are without merit,

_____

[3] Defendants assert that Ms Hale's third reprimand was issued for reporting holiday pay on her time sheet for non-holiday time off.  (Docket No. 38 p.14).

12

the Magistrate Judge recommends that the defendants' motions for summary judgment be granted.

Under Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636 (b)(1)(C), this Court reviews de novo those portions of the Magistrate Judge's R&R to which specific objections are made.  Upon review, this Court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

As the plaintiffs do not object to the R&R's recommendation that the Court deny the claims of constructive discharge, loss of consortium, and negligent hiring, training, and supervision, the Court will adopt the Magistrate Judge's recommendation on these grounds without further review.

Because this Court dismissed Ms Hale's FMLA claim in its 7 October 2004 order, it  does not need to adopt the R&R's recommendation on this claim.

The R&R affords analysis for a claim entitled "[a]lleged failure of the village [sic] to timely and appropriately [sic] respond."  This Court construes this not as an individual cause of action but as an element of an affirmative defense available to employers in cases where a plaintiff alleging sexual discrimination suffered no tangible adverse employment actions.  See Faragher, 524 U.S. at 807.  However, because the Court finds that the defendants are not liable on the plaintiffs sexual harassment claims, there is no need to address any defenses to the allegations.

Accordingly, under Rule 72(b) and § 636(b)(1)(c), this Court will review de novo these portions of the R&R to which the plaintiffs specifically object: (1) sexual harassment in violation of Title VII and § 4112; (2) retaliation in violation of Title VII and O.R.C. § 4112; and (3) intentional infliction fo emotional distress in violation of state law.

13

### III.  STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323;  see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir.1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir.1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a

14

motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment shall be denied "[i]f there are . . .  'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.

**IV.  LAW AND ANALYSIS**

15

**A.  Sexual Harassment Claims**

Plaintiffs Hale and Butler assert hostile work environment sexual harassment claims in violation of Title VII and O.R.C. §  4112 against Mr. Sample and the Village of Madison.  Mr. Sample argues in his motion for summary judgment that the behavior complained of is not severe nor pervasive enough to have created a hostile work environment.  (Docket No. 39).  The Village argues that even assuming Mr. Sample's behavior amounted to sexual harassment, the Village is not liable because it took adequate and effective remedial measures when it learned of the plaintiffs' complaints. (Docket No. 38).  Magistrate Judge Hemann agreed with both defendants in her R&R. (Docket No. 50).  In their objection, the plaintiffs contend that Mr. Sample's conduct was severe and pervasive enough to constitute a hostile work environment and they disagree with the Magistrate Judge's conclusion. (Docket No. 52).

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment."  Williams v. Gen. Motors Corp., 187 F.3d 553, 560-61 (6th Cir. 1999).  Sexual harassment claims under O.R.C. § 4112 are analyzed in the same manner as Title VII claims.  Knox v. Neton Auto Products Mfg., 375 F.3d 451, 457 (6th Cir. 2004).  To establish a prima facie case of a hostile work environment based on sex, the plaintiff must demonstrate the following:  1) she or he is a member of a protected class; 2) she or he was subjected to unwelcome sexual harassment; 3) the harassment was based on his or her sex (gender); 4) the harassment created a hostile or abusive work environment; and 5) the employer is vicariously liable.  Clark v. United Parcel Serv., Inc., 400 F.3d 341, 347 (6th Cir. 2005).

16

In the instant case, the pertinent question is whether Mr. Sample's conduct created a hostile work environment .

A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris, 510 U.S. at 21.  In making this determination, the Court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.  For conduct to be actionable under Title VII, the plaintiff must demonstrate that the work environment was both objectively and subjectively hostile – an environment that a reasonable person would find hostile or abusive, and one that plaintiff did in fact find hostile or abusive. Id. at 21.  The Sixth Circuit instructs that "[t]he harassment should be ongoing, rather than a set of isolated or sporadic incidents." Clark, 400 F.3d at 351.  This demanding standard is intended to "ensure that Title VII does not become a 'general civility code.'" Faragher, 524 U.S. at 788.

The conduct alleged by the plaintiffs does not amount to a hostile work environment within the meaning of Title VII.  Given the nature and infrequency of the incidents complained of, this Court finds as a matter of law that Mr. Sample's conduct was neither severe nor pervasive enough to support an actionable sexual harassment claim.  According to the plaintiffs' deposition transcripts and the list of complaints enumerated by the plaintiffs in Mr. Murray's report (Evangelista Dep., Ex. 3 pp. 3-7), the incidents and comments generally occurred on a monthly basis rather than a frequent

17

basis.  The evidence produced by the plaintiffs regarding the nature of the incidents demonstrates that Mr. Sample's conduct, while unrefined and offensive, was neither severe nor physically threatening in anyway.  Ms Hale testified to one incident of physical contact at the photocopier, but her description of the incident gave no indication that the contact was physically threatening nor sexual in nature.  (See Hale Dep. pp. 38-40).

Ms Hale testified that Mr. Sample's outbursts were intimidating, but that such outbursts did not occur on a regular or ongoing basis.  (Hale Dep. p. 239).  Although both plaintiffs testified in their depositions that they feared for their safety at work, neither could articulate why she feared for her safety.

There is no evidence before this Court that indicates Mr. Sample's conduct interfered with the plaintiffs' work performance.  To the contrary, a review of Ms Hale's deposition transcript demonstrates that at times, it was she who refused to perform tasks requested of her, not because she was distraught or affected by a hostile work environment, but because she decided that she didn't want to do the task or she determined that Mr. Sample was capable of doing the task himself.  Additionally, the allegation that Mr. Sample withheld pertinent information from the plaintiffs that prevented them from doing their jobs and that Mr. Sample isolated the plaintiffs from their co-workers is not based on first hand knowledge.  See generally Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (marking as standard that the plaintiff must present "more than a scintilla of evidence in support of her position; the evidence must be such that a jury could reasonably find for the plaintiff").

18

In sum, the vulgar comments, jokes and isolated incidents alleged by the plaintiffs do not rise to a level which creates an issue of material fact as to whether the conduct alleged was severe or pervasive so as to create an actionable hostile work environment.  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  Faragher, 524 U.S. at 788.  The conduct complained of by Ms Hale and Ms Butler, though it was determined to violate the sexual harassment policy of the municipality, did not amount to discriminatory changes in the terms and conditions of their employment.

Because the allegations taken in a light most favorable to the plaintiffs do not show that the conduct complained of was sufficiently severe or pervasive to alter the conditions of the plaintiffs' working environment, the recommendation of Magistrate Judge Hemann will be adopted and the plaintiffs' Title VII and O.R.C. § 4112 sexual harassment claims asserted against Mr Sample and the Village of Madison will be dismissed as a matter of law.

**B.  Retaliation Claims**

The defendants argue that the plaintiffs' retaliation claims brought under Title VII and O.R.C. § 4112 should be dismissed because the plaintiffs failed to satisfy the requisite prima facie burden.  (Docket Nos. 38, 39).  Magistrate Judge Hemann agrees, specifying that plaintiffs suffered no adverse employment action.  (Docket No. 50).  The plaintiffs object to the R&R on the grounds that they did produce sufficient evidence inferring retaliation which thereby created a genuine issue of material fact to present to a jury.

19

Title VII "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 126 S.Ct. at 2414.  In order for a plaintiff to prevail on a Title VII and O.R.C. § 4112 retaliation claim in the absence of direct evidence, as in this case, she must first establish a prima facie case by showing the following: 1) she engaged in protected activity; 2) the exercise of her protected rights were known to the defendant; 3) the defendant subsequently took employment action against the plaintiff that a reasonable employee would have found materially adverse; and 4) there exists a causal connection between the protected activity and the adverse employment action.  Watson v. City of Cleveland, 202 Fed.Appx. 844 , 855 (6th Cir. 2006) (employing the "reasonable employee" standard for materially adverse employment action recently set forth by the U.S. Supreme Court in Burlington).

This Court employs the McDonnell Douglas burden-shifting analysis in retaliation claims.  Gentry v. Summit Behavioral Healthcare, 197 Fed. Appx. 434, 441 (6th Cir. 2006).  Thus, if the plaintiff meets the initial burden of establishing the prima facie case, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory reason for its conduct.  Id.  If the defendant satisfies its burden, then the plaintiff must demonstrate that the proffered explanation was pretext.  Id.

In the present case, the plaintiffs cannot make out a prima facie case of retaliation because there was no materially adverse employment action.  Burlington held that the standard for adverse employment action in retaliation cases is broader than in discrimination cases.  Specifically, a materially adverse employment action is one which would dissuade a reasonable worker from making a charge of discrimination. Burlington, 126 S.Ct. at 2415.  The facts alleged by Ms Hale and Ms Butler do not fall

20

within this standard.  Ms Butler alleges that in retaliation, Mr. Sample isolated her from co-workers, attempted to entice her to violate the Village's computer internet policy, kept information from her in an effort to reduce her ability to perform the functions of her job, directed her to clean up the office, and was generally rude to her.  Considering these facts in a light most favorable to the plaintiff, this Court finds that such conduct would not dissuade a reasonable person from pursuing protected activity.

Ms Hale's allegations of retaliation include reduction of certain job responsibilities, control over the office thermostat, posting her medical appointments on the office calendar, removal of her headset which she asserts was medically necessary, a directive to clean out a supply closet, and Mr. Sample's irrational outbursts.  Ms Hale further asserts that the disciplinary actions taken against her were all acts of retaliation. Under the circumstances of each of these allegations, a reasonable person would not have been dissuaded from invoking Title VII protections.  A reasonable person would understand that the responsibilities that Mr. Sample took from Ms Hale were duties that he had delegated to her, but had elected to reassume responsibility for because the parties agreed that they should better clarify their job duties.  An office supervisor may control the office temperature.  A reasonable person would not be dissuaded from pursuing protected activity because her employer requested information from a physician regarding the medical necessity of telephone headsets (the defendants requested information from Ms Hale's physician upon receiving a note on her physician's prescription letterhead that read "telephone headsets").  A directive to clean a supply closet, as inconvenient as it may have been at that time, is reasonable as a task assigned to maintain organization and order in the office.  Further, although Mr.

Sample's irrational outbursts could be construed as unusual in a place of business, the evidence before this Court is that these outbursts took place before the sexual harassment complaints were made as well as afterwards and, therefore, cannot be construed as retaliation.

Finally, with respect to the disciplinary actions taken against Ms Hale, even if Ms Hale could demonstrate her prima facie case that such reprimands were unlawful retaliation, the defendants asserted legitimate, non-retaliatory explanations for each of these actions. Ms Hale failed to produce any facts or evidence, other than her personal belief, which suggest that the proffered explanations were pretext for retaliation.

Considering all of the plaintiffs' allegations of retaliatory conduct, this Court finds that such conduct would not dissuade a reasonable person from pursuing protected Title VII activity, and will dismiss the plaintiffs' claims of retaliation asserted under Title VII and O.R.C. § 4112.

## C. Intentional Infliction of Emotional Distress Claims

Both defendants contend that the plaintiffs' claims for intentional infliction of emotional distress must be dismissed as a matter of law because both the Village and Mr. Sample are immune from liability under O.R.C. § 2744, Ohio's Political Subdivision Tort Liability Act. In the alternative, the defendants argue the evidence does not demonstrate that the plaintiffs were subjected to behavior that was extreme or outrageous as required by state law. (Docket Nos. 38, 39). Magistrate Judge Hemann advises that the Village, not Mr. Sample, is protected from liability under § 2744, but that the claim should fail as against Mr. Sample because his behavior did not rise to the level of "extreme and outrageous" as required by state law. (Docket No. 50). In their

22

objection, the plaintiffs argue that the Village is not protected by § 2744 because the statute excludes intentional torts arising out of the employment relationship and because Mr. Sample's behavior so exceeded the bounds of decency that there is a triable issue to present to a jury.  (Docket No. 52).

　　　　To succeed on a claim of intentional infliction of emotional distress, the plaintiff must demonstrate the following: 1) the defendant either intended to cause emotional distress or knew or should have known that his actions would result in serious emotional distress to the plaintiff; 2) the defendant's conduct was "so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;" 3) the actor's actions proximately caused of plaintiff's psychic injury; and 4) the mental anguish suffered by plaintiff is of such a serious nature that no reasonable man could be expected to endure it.  Garcia v. ANR Freight System, 942 F. Supp. 351, 359 (N.D.Ohio 1996) (citing Tschantz v. Ferguson, 97 Ohio App. 3d 693, 702, 647 N.E.2d 507 (1994)).  In defining "extreme and outrageous" conduct, the Ohio Supreme Court cites to comment d to Section 46 of the Restatement of Torts (Second):

> Generally, [a] case [of intentional infliction of emotional distress] is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must  still be freedom

23

to express an unflattering opinion, and some safety valve must be left
through which irascible tempers may blow off relatively harmless steam.

Yeager v. Local Union 20, 6 Ohio St. 3d 369, 374-75 (Ohio 1983).

In the instant case, nothing in the facts asserted by the plaintiffs support a claim

of intentional infliction of emotional distress under the standard employed by the Ohio

Supreme Court.  In reaching this conclusion, this Court does not diminish the

inappropriateness of Mr. Sample's comments or his unbecoming conduct.  However, the

conduct complained of by the plaintiffs - sexist jokes and behavior, yelling, and poor

management skills - do not satisfy the high burden that must be met under Ohio law.

Accordingly, plaintiffs' claims of intentional infliction of emotional distress as against Mr.

Sample and the Village of Madison must fail as a matter of law.


**V. CONCLUSION**

This Court finds there is no genuine issue as to any material fact in this case.

The facts considered in a light most favorable to the plaintiffs do not show a prima facie

case for either sexual harassment or retaliation under Title VII and O.R.C. § 4112, nor do

they support a state law claim of intentional infliction of emotional distress.

This Court adopts Magistrate Judge Hemann's R&R and grants defendants John

Sample's and the Village of Madison's motions for summary judgment.  (Docket Nos. 38,

39).

Accordingly, all of the plaintiffs' claims are dismissed as a matter of law pursuant

to Fed. R. Civ. P. 56(c): 1) sexual harassment in violation of Title VII and O.R.C. § 4112;

(2) retaliation in violation of Title VII and O.R.C. § 4112; (3) intentional infliction of emotional distress in violation of state law; (4) negligent hiring, supervising, and retention in violation of state law; (5) constructive discharge in violation of state law; and (6) loss of companionship and consortium.

      IT IS SO ORDERED.

                                   /s/ Lesley Wells
                                UNITED STATES DISTRICT JUDGE

Date:   21 June 2007